IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **PAULA SHA'NAY LEWIS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | **2:08-cv-0555-UWC** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Plaintiff Paula Sha'nay Lewis ("Plaintiff") brings this action for disability insurance benefits pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").

The Court concludes that the Administrative Law Judge ("ALJ") failed to fully develop the record; and that his decision, which became the decision of the Commissioner, failed to consider the combined effects of Plaintiff's multiple impairments, and generally is not supported by substantial evidence.

Therefore, the Court will reverse and remand the decision for proceedings not inconsistent with this Opinion.

1

## I. Procedural History

A supplemental security income application was filed on Plaintiff's behalf on February 5, 2004, alleging disability beginning on January 1, 1998. (R. 25.) This claim was initially denied on August 14, 2003. (R. 43.) Plaintiff requested a hearing before an ALJ on July 28, 2004. (R. 49.) The Plaintiff appeared and testified at a hearing on January 9, 2006. (R. 25.) The ALJ denied benefits on November 17, 2006. (R. 34.) The Appeals Council declined review on January 29, 2008 (R. 6.)

Having timely pursued and exhausted his administrative remedies, on April 1, 2008, Plaintiff filed this action for judicial review, pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. Factual Background

At the time of the administrative hearing, Plaintiff, who was born on January 14, 1987, was 18 years old. (R. 25.)

Plaintiff has a ninth grade education. (R. 471.) Her past work experience consists of two short-term cashier jobs in the fast food industry. (R. 130, 486.) The Vocational Expert classified these jobs as unskilled, light, and with no transferable skills. (R. 486.)

Plaintiff alleges disability due to diabetes, hypertension, headaches, blurred vision, and depression.

A. Plaintiff's Treatment History

Plaintiff has had diabetes since 1998. (R. 251.)

Since 1999 Plaintiff has been treated at The Children's Hospital Pediatric Diabetes Center for insulin dependent diabetes mellitus. (R. 295-318.)[1]

In September 2005, Plaintiff had a psychiatric evaluation by Dr. Wolfram Glaser. (R. 322.) Dr. Glaser's assessment of Plaintiff was that she has no strengths, that she has severe personality disorder, and that she is at risk for suicide, homicide, and violence. *Id.* Dr. Glaser's diagnoses included depressive disorder NOS, personality disorder NOS, a current GAF of 49, and the highest GAF in the past year as 60. *Id.* Plaintiff medications include Abilify and Lexapro. (R. 321.)

Plaintiff testified that she had depression before she gave birth to a child in November 2005. (R. 482.) In addition, Plaintiff testified that she hears voices, sometimes gets in moods where she wants to hurt people, and cries for no reason. (R. 481-82.)

Plaintiff testified that she stopped working because of dizziness, light-headedness, and a propensity to pass out. (R. 473.) Plaintiff also testified that she could not work because she got weak, had headaches, and was always sick. (R. 479.)

---

[1] On several occasions, a Doctor noted that Plaintiff was noncompliant or poorly controlling her diabetes. (R. 176, 311, 315.)

3

Dr. Bruce Romeo, an internist, examined Plaintiff in February 2006. (R. 333.) Dr. Romeo's summary was that Plaintiff had severe poorly controlled type 1 diabetes mellitus with history of chronic non-compliance and fetal wastage. (R. 336.) Dr. Romeo found that Plaintiff had no limits on her ability to stand, walk, or sit. (R. 339.)

The record does not reflect that Plaintiff has undergone any psychiatric or neuro-psychological tests.

### III. The ALJ's Decision

The ALJ first analyzed whether Plaintiff was disabled prior to the age of eighteen. The ALJ found that Plaintiff had not performed substantial activity since her alleged onset date of disability of January 1, 1998. (R.33) Next, the ALJ found that Plaintiff suffered from the severe impairments of diabetes mellitus and hypertension. (R. 28).

After determining that the claimant did not have an impairment that met any of the listed impairments of Appendix 1, Subpart P, 20 CFR Part 404, the ALJ discussed the domains. For the first, second, fourth, and fifth domains the ALJ stated there was no evidence that supported an impairment and then discussed evidence that supported a finding of no impairment.

For the third domain, the ALJ found a less than marked limitation of function after considering several pieces of evidence. The Plaintiff had reported that she never

had friends and had difficulty with teachers. Plaintiff's mother, however, stated that Plaintiff got along with adults, teachers, and had some friends. For the sixth domain the ALJ found a less than marked limitation of function because Plaintiff had insulin-dependent diabetes mellitus and hypertension but Plaintiff was noncompliant with her prescribed medication and diet.

Next, the ALJ looked at whether Plaintiff was disabled as an adult. The ALJ found that the Plaintiff has the following severe impairments as an adult: diabetes mellitus, hypertension, depressive disorder not otherwise specified, and personality disorder not otherwise specified. (R. 30.)

The ALJ first looked at whether Plaintiff's diabetes were disabling. The ALJ found that Plaintiff's diabetes had not been well controlled since 2000 because Plaintiff was noncompliant with prescribed medication and diet. (R. 31.) Next, the ALJ dismissed Plaintiff's claims of dizziness, passing out spells, weakness, fatigue, headaches, and blurred visions because the "[t]he claimant's medical records do not . . . document such symptoms of a frequency or severity so as to prevent her from working on a sustained basis." The ALJ then dismissed Plaintiff's claim of hypertension by stating that "there is no indication that her hypertension is not controlled with prescribed medication." *Id.* Lastly, the ALJ dismissed Dr. Glaser's evaluation because there was a GAF of 60 within the last twelve months and there

was no evidence that Plaintiff had anything more than mild to moderate restrictions of living. (R. 32.)

The ALJ found that the claimant is capable of performing a significant number of sedentary jobs, considering her age, education, past work experience, and residual functional capacity.

Accordingly, the ALJ found that Plaintiff was not disabled since becoming eighteen.

## IV.  Controlling Legal Principles

The district court's scope of review is limited to determining whether substantial evidence supports the Commissioner's decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla, but less than a preponderance: it is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Bloodsworth* v. *Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotation marks omitted).

Additionally, the Court must determine whether proper legal standards were applied. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)). "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for

determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

Pursuant to the Social Security Act, regulations have been established which prescribe a sequential process for determining whether a child is eligible for Title XVI payments upon the basis of disability. "A claimant under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. § 1382c(a)(3)(C)(I).  The sequential evaluation process is a three-step process.  (*Id.*)  If, at any step, a determination of "disabled" or "not disabled" can be made, the evaluation is discontinued at that point. (*Id.*)

The first step is to determine whether the Claimant has engaged in any substantial gainful employment activity.  The second step is to determine whether the Claimant has an impairment or combination of impairments that are "severe." (*Id.*)  An impairment or combination of impairments is "severe" if it has more than a minimal impact on a child's functioning. (*Id.*)

The third step is for the ALJ to determine whether the Claimant's impairments

meet, or medically or functionally equal, a listed impairment. (*Id.* at 17-18.)[2] In determining whether an impairment or combination of impairments functionally equals the listings, the claimant's functioning must be assessed in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. In making this assessment, the ALJ must compare how appropriately, effectively, and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments. To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926a(d).

In assessing whether the claimant has a "marked or "extreme" limitation, the ALJ must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe. 20 C.F.R. § 416.926a(a). Moreover, the ALJ must consider all interactive and cumulative effects of the

---

[2] *See also* 20 C.F.R. pt 404, subpt. P, app. 1 ("Listing"), which details "impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1520(a). *See Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985). If the claimant's medical profile meets the criteria for an impairment in the "Listing," then the claimant is disabled by law and no further inquiry is necessary.

claimant's impairment or combination of impairments individually in each domain. 20 CFR § 416.926a(c).

For adults, there is also a sequential evaluation of disability claims. 20 C.F.R. § 404.1520(a)(4) (1983). The first consideration is whether the claimant is working. *Id.* If the claimant is working, she is not disabled. *Id.* If the claimant is not working, the Commissioner must determine whether the claimant suffers from a severe impairment. *Id.* If the claimant does not suffer from a severe impairment, she is not disabled. *Id.* If the claimant suffers from a severe impairment, then the Commissioner must consider whether the claimant meets any of the listings in 20 C.F.R. pt 404, subpt P, app. 1 ("Listing"), which details "impairments which are considered severe enough to prevent a person from doing any gainful activity." *Id.* § 404.1520(a)(4). *See Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985). If the claimant's medical profile meets the criteria for an impairment in the "Listing," then the Commissioner "will find [the claimant] disabled without considering . . . age, education, and work experience." *Id.* § 404.1520(d).

When a claimant's "severe" impairment does not fall within a Listing, but nonetheless restricts her ability to perform basic work activities, the ALJ must then assess the claimant's residual functional capacity and the range of work activities that the claimant could perform despite his impairments. This evaluation must give

9

consideration to claimant's subjective complaints, accounting for nature of pain, medication, treatment, functional restrictions, claimant's daily activities, and other relevant factors.  20 C.F.R. § 404.1512.

Pursuant to 20 C.F.R. § 404.1523, the ALJ is required to consider the disabling effect of multiple impairments:

> In determining whether your physical or mental impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairments if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

Social Security proceedings are inquisitorial rather than adversarial. *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000) (citing *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000)).  The regulations state that the SSA is to "conduct the administrative review process in an informal, nonadversary manner."  20 CFR § 404.900(b) (1999).  Specifically, the ALJ has a duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 110-11; *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981) ("ALJ has a basic obligation to develop a full and fair record [, which] exists even if the claimant is

represented by counsel").

## V. Analysis

The ALJ failed to develop the record. The Plaintiff testified that she was depressed prior to childbirth. In addition, Plaintiff was diagnosed with depressive disorder and personality disorder just over nine months after becoming eighteen. Furthermore, a doctor at UAB Pediatric Endocrinology recommended that Plaintiff be referred to a child psychologist on November 13, 2000. (R. 311.) On that day, Plaintiff had reported sadness and feeling bad a lot. (R. 311.)

Remarkably, despite the undisputed evidence that Plaintiff has been prescribed the drug Abilify[3] and Lexapro,[4] the ALJ did not seek consultative psychiatric and/or neuro-psychological examinations. He simply defaulted on his obligation to fully develop the record.

The ALJ also failed to consider the combined effect of all of Plaintiff's impairments. While the ALJ found that Plaintiff's severe impairments prior to turning eighteen years old included diabetes and hypertension, his findings with respect to the domains do not mention a consideration of the combined effects of

---

[3]Abilify is prescribed for acute and maintenance treatment of adults with manic or mixed episodes associated with bi-polar disorder.

[4]Lexapro is prescribed for major depressive disorder, generalized anxiety disorder, panic disorder, social anxiety disorder, and obsessive-compulsive disorder.

11

these severe impairments. In addition, while the ALJ found that Plaintiff's severe impairments after becoming eighteen years old include the same severe impairments, as well as depressive disorder not otherwise specified and personality disorder not otherwise specified, his findings do not mention a consideration of the combined effects of these severe impairments. The law requires him to do so. 20 C.F.R. § 404.1523.

These transgressions of the ALJ negate a conclusion that substantial evidence supports his decision denying Plaintiff's application for benefits

## Conclusion

By separate order, the decision will be remanded for proceedings not inconsistent with this Opinion.

_____
U.W. Clemon
United States District Judge